FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ FEB 0 1 2012 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X

PAUL VERBITSKY,

                Plaintiff,

-against-

DR. MONTALBANO, a physician at Arthur Kill
Correctional Facility; PAM SHARPE,

                Defendants.

------------------------------------------------------------------ X

08-CV-5148 (ARR)

NOT FOR ELECTRONIC
OR PRINT PUBLICATION

OPINION & ORDER

ROSS, United States District Judge:

Paul Verbitsky ("plaintiff"), appearing pro se, commenced this action pursuant to 42 U.S.C. § 1983 alleging that Dr. Christin A. Montalbano and Nurse Pam Sharpe (collectively "defendants") were deliberately indifferent to his medical needs, in violation of the Eighth Amendment, while he was incarcerated at Arthur Kill Correctional Facility ("Arthur Kill").[1] Defendants have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons stated below, the court grants defendants' motion.

## BACKGROUND[2]

Plaintiff suffers from lower back and foot pain stemming, in part, from a motor vehicle accident that occurred on November 15, 2005. Decl. of Dr. Christin Montalbano in Support of

---

[1] In evaluating a prior motion to dismiss, the court considered incorporated into the complaint claims against Nurse Sharpe first made in plaintiff's reply. Dkt. No. 26 at 10 n.5. In his initial complaint, plaintiff had also named D. Breslin, Arthur Kill's Superintendent, as a defendant. The court dismissed Breslin from the suit upon a determination that plaintiff had not alleged facts demonstrating that Breslin had any direct involvement with, knowledge of, or responsibility for the alleged denial of medical care and treatment. See Dkt. No. 4 at 2.

[2] Upon moving for summary judgment, defendants gave the notice to a pro se plaintiff required by Local Rule 56.2. See Dkt. No. 67. In opposing summary judgment, plaintiff has not provided a counter-statement to defendants' proposed statement of facts or submitted affidavits in support of his version of events. Instead, plaintiff's opposition is made up principally of new allegations against defendants. Insofar as he addresses the claims on which defendants seek summary judgment, plaintiff attaches medical records and asserts that he has supporting evidence that he will bring at trial. Therefore, for the purpose of this motion, the court shall consider undisputed those facts that are supported by the record and to which plaintiff does not object. See Fed. R. Civ. P. 56(e). To the degree that plaintiff has contested certain facts, the court either omits them or notes plaintiff's objections thereto.

1

Summary Judgment ("Montalbano Decl."), Ex. Q. He has a documented history of herniated discs, hypertension, depression, and anxiety. Id. Prior to his incarceration in 2008, plaintiff was taking prescribed hydrocodone and oxycontin for pain. Id.

Although the record does not indicate when plaintiff was first incarcerated, plaintiff had an initial medical assessment at Herkimer County Jail ("Herkimer") on June 25, 2008. Id. ¶8, Ex. B. The assessment indicates that plaintiff was taking oxycontin and oxycodone at the time. Id. Ex. B. Plaintiff was transferred to Oneida County Jail ("Oneida") shortly thereafter. On July 2, 2008, the Oneida medical staff noted that plaintiff was "ambulating with shaking," that he had refused medication, and that he wanted "to go to the hospital" because he was suffering from all-over pain and anxiety. Id. Ex. C. In the following days, the medical staff speculated that plaintiff might be experiencing withdrawal symptoms from oxycontin and oxycodone, noted that plaintiff requested "more pain meds" and the use of a cane, and observed that plaintiff appeared to exacerbating purposefully his difficulties walking. Id.

Plaintiff was sent back to Herkimer on July 8, 2008 and reported that he needed and had used a wheelchair at Oneida. Id., Ex. B. Plaintiff's medical records indicate that a medical staff member called Oneida and was told that plaintiff had been in the infirmary but "ambulate[d] independently" and "ha[d] tremors 'when observed.'" Id. The following day, the medical staff observed that plaintiff's speech was forced and noted that he was complaining of pain. Id. Plaintiff was sent to the emergency room for an evaluation, and Herkimer's medical notes for plaintiff indicate that he was discharged from the hospital with a diagnosis of anxiety and narcotics withdrawal. Id. Ex. B, D. On July 15, 2008, a lieutenant called the medical staff to state that he had observed plaintiff in the commissary bending and ambulating well on camera with no noted tremors. Id. Ex. B. Plaintiff's records from Herkimer indicate that he last visited

its medical unit on July 28, 2008 and reported that ibuprofen was not helping his pain. Id. Plaintiff was transferred out of Herkimer on August 8, 2008. Id. ¶18, Ex. E. On plaintiff's health transfer form, it indicates that plaintiff has a history of depression, "narcotics abuse/withdrawal," and "malingering behavior." Id. Ex. E.

Plaintiff arrived at Downstate Correctional Facility ("Downstate") on August 12, 2008. Id. ¶ 20, Ex. G. The day before, complaining of an anxiety attack, plaintiff had again visited the emergency room. Id. ¶20, Ex. F. The treatment notes indicate that plaintiff had "repeatedly asked" for pain medication for chronic back pain and that plaintiff was discharged with the diagnosis of "anxiety – tremors." Id. Plaintiff's intake form from Downstate indicates that plaintiff had a history of hypertension, back pain, anxiety, and malingering and that plaintiff had difficulty walking. Id. ¶20, Ex. G. On the evening of his arrival at Downstate, plaintiff was brought to the emergency room on a stretcher, shaking and claiming that he was too weak to walk. Id. ¶20, Ex. H. The nurse indicated that his speech wavered between clear and sluggish. Id. About a month later, on September 16, 2008, plaintiff was admitted to Downstate Infirmary after complaining of difficulty ambulating and back pain. Id. ¶ 21, Ex. I. It was noted at the time that plaintiff had a history of "narcotic abuse/withdrawal" and of "malingering behavior." Id. Plaintiff was discharged the following day. Id. ¶ 22, Ex. I.

Plaintiff was then transferred to Arthur Kill, where he was an inmate from September 18, 2008, to June 28, 2010. Id. ¶ 3. On September 18, 2008, plaintiff underwent a routine intake examination by Nurse Sharpe and was continued on medications he had been receiving at Downstate for hypertension, depression, and pain management. Id. ¶¶ 24-25, Ex. K; Decl. of Pam Sharpe, Registered Nurse in Support of Summary Judgment ("Sharpe Decl.) ¶ 9, Ex. B. Nurse Sharpe observed that plaintiff was able to ambulate without assistance. Sharpe Decl. ¶ 9.

Plaintiff was given naproxen and percogesic for pain and a pass for the use of a cane. Montalbano Decl. ¶ 25, Ex. K, L; Sharpe Decl. ¶ 9, Ex. C, D. Plaintiff stated that he needed stronger pain medication. Montalbano Decl. Ex. K. Later that day, plaintiff was returned to the medical center by security staff after he reported that the distance from the medical center to the dorm was too far to walk and that he felt dizzy. Id. ¶ 26, Ex. K. That evening, plaintiff was seen by Nurse Grieg and reported that he could not walk and suffered from anxiety. Id. Ex. N. Nurse Grieg's progress notes indicate that plaintiff's county medical records show that plaintiff was constantly complaining, that he was viewed on camera at the commissary bending and ambulating well, and that he may be experiencing withdrawal from pain medications. Id. The notes state that plaintiff accused the county and Downstate medical staff of lying and that plaintiff wanted pain medications and a wheelchair. Id. According to the notes, plaintiff was told he was not getting a wheelchair and that he was to use his cane, and to take naproxen and percogesic, as instructed. Id. Plaintiff reportedly threatened a lawsuit. Id.[3]

On September 22, 2008, Dr. Montalbano met with plaintiff for a scheduled consultation. Id. ¶¶ 28-29, Ex. N. Medical notes from that day indicate that plaintiff requested a wheelchair. Id. Ex. N. During the consultation, plaintiff stated that he could not walk, and Dr. Montalbano's notes indicate that plaintiff requested oxycontin and a wheelchair. Id. Ex. O. Dr. Montalbano reviewed plaintiff's medical records during his period of incarceration and obtained his prior medical records, which showed that plaintiff had been taking narcotic pain medications before being incarcerated. Id. ¶ 29-30; see id. Ex. Q. According to Dr. Montalbano, he determined, pursuant to a review of plaintiff's medical records, that plaintiff did not require narcotic pain medication. Id. ¶31. Dr. Montalbano believed that that there was "no doubt" that plaintiff was

---

[3] Plaintiff asserts, in his opposition papers, that Dr. Montalbano saw plaintiff four times on the day plaintiff arrived at Arthur Kill and that Dr. Montalbano ordered plaintiff to walk and threatened consequences if plaintiff did not comply. Dkt. No. 72 at 2.

4

experiencing withdrawal symptoms while at Herkimer, Oneida, and Downstate, and the doctor did not "want to then supply him with the same medication." Id. Dr. Montalbano was aware that plaintiff had a history of malingering and drug-seeking behavior and recalls plaintiff's "constantly coming to the medical center seeking narcotic pain medication." Id. In Dr. Montalbano's judgment, naproxen and percogesic, both non-narcotic medications, were the "most appropriate medications to prescribe" in light of plaintiff's history of depression and narcotics dependence.[4] Montalbano Decl. ¶ 31. In his affidavit, Dr. Montalbano stated that he would have prescribed narcotic medication to plaintiff if he believed that plaintiff truly required it. Id.

Dr. Montalbano remained plaintiff's primary care physician through approximately February 2009. Id. ¶¶ 2, 4. On October 23, 2008, plaintiff informed Dr. Montalbano that he had not taken his blood pressure medication for three weeks. Id. ¶ 33; Ex. R. Dr. Montalbano warned plaintiff of the risks of his failure to take the medication and admitted plaintiff to the infirmary overnight for monitoring. Id. Upon discharge, plaintiff was required to report to medical each day to receive his blood pressure medication. Id. ¶ 33; Ex. T. On several days in December 2008, plaintiff refused to appear for his blood pressure medication and signed refusal of medical treatment forms indicating that it was painful to walk to the infirmary and caused his blood pressure to rise. Id. Ex. U. Plaintiff was twice admitted to the infirmary—from December 8-10, 2008 and January 6-12, 2009—for elevated blood pressure from not having taken his medication. Id. ¶¶ 35-36, Ex. V, W. On January 7, 2009, plaintiff refused to take his hypertension medication because he claimed his pain issues were not being addressed. Id. Ex.

---

[4] Plaintiff argues that he "never asked for narcotics." Dkt. No. 72 at 4. However, plaintiff states that he told Dr. Montalbano that he had taken a drug regimen that included oxycontin and oxycodone, asserts that he "cannot function" without that combination of medications, and argues that he should have been provided with such pain management in prison. Id. at 2-4. Plaintiff also argues that he was eventually prescribed MS Contin (Morphine), which "shows that his medical needs were deprived of." Dkt. No. 72-2.

W. The infirmary notes indicate that, on January 8, 2009, plaintiff "verbalized some relief" after taking Motrin and Tylenol for his pain[5] and that, on January 9, 2009, plaintiff was walking well with a cane. Montalbano Decl. Ex. W. At his January 12, 2009 discharge, plaintiff stated that he needed a wheelchair, but he was not provided one. Id. Dr. Montalbano found plaintiff's refusal to take his hypertension medication and "severely risking his health because he wasn't being provided with narcotic pain and medication" consistent with drug-seeking behavior. Id. ¶ 37.

On at least four separate documented occasions between September 2008 and April 2009, plaintiff sought authorization to use a wheelchair. Sharpe Decl. ¶ 10, Ex. E. Plaintiff's initial medical pass for a cane had an end date of March 18, 2009. Id. Ex. D. On April 10, 2009, plaintiff was issued a two-week pass for the use of a cane. Id. Ex. F. On April 28, plaintiff was issued another two-week pass for the use of a cane and of a wheelchair for distances only. Id. Ex. G. Such a pass authorizes an inmate to use a wheelchair only for travel to the medical center. Id. ¶ 12. The pass was renewed for six months on May 5, 2009. Id. Ex. H. However, on May 8, 2009, Dr. Felix Ezekwe, who had replaced Dr. Montalbano as plaintiff's primary care physician, upgraded plaintiff to total and permanent use of a wheelchair until plaintiff could be evaluated by Physiatry. Id. ¶ 14, Ex. I. In a memorandum to Physiatry dated May 15, 2009, it was noted that plaintiff's walking had changed somewhat since his initial arrival at Arthur Kill, and an evaluation of plaintiff's need for a wheelchair was requested. Id. Ex. J. The memorandum also stated that "[t]here is a concern in placing [plaintiff] in a wheelchair and the medical problems this will cause him in the long run." Id. In response, Physiatry recommended that plaintiff use a wheelchair for distances over 200 feet and stated that plaintiff needed to continue "to be mobile for his mental well being." Id. ¶ 16, Ex. J. On July

---

[5] In opposition, plaintiff asserts that he never said that these medications gave him relief and that, to the contrary, they were harmful because of his high blood pressure. Dkt. No. 72 at 3.

16, 2009, Dr. Ezekwe signed a medical pass permitting plaintiff to use a wheelchair for distances over 200 feet. Id. Ex. K. According to the affidavit of Nurse Sharpe, she did not modify or deviate from the doctor's orders regarding plaintiff's use of a wheelchair, and nurses employed in the New York State Department of Correctional Services do not have the authority to create, modify, or cancel medical orders. Id. ¶¶ 8, 18.

Medical records submitted by plaintiff indicate that Dr. Ezekwe initially continued to prescribe non-narcotic medications for plaintiff's pain. Plaintiff was also prescribed physical therapy and an ankle brace at some point but reportedly did not respond well to physical therapy and requested to stop because of pain. Sometime in the spring of 2009, Dr. Ezekwe added a muscle relaxant to plaintiff's prescriptions. Dr. Ezekwe subsequently sought a pain management consultation for plaintiff and, on September 8, 2009, started plaintiff on a lose dose opioid for pain control. See Dkt. Nos. 72-5, 72-6, 72-7.

## DISCUSSION

I.  Standard on Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The function of the court is not to resolve disputed issues but to determine whether there is a genuine issue to be tried. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "While genuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party, materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (internal quotation marks and ellipses omitted)).

In assessing whether summary judgment is appropriate, the court considers "the pleadings, depositions, answers to interrogatories and admissions on file, together with any other firsthand information including but not limited to affidavits." Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011) (quoting In re Bennett Funding Grp., Inc., 336 F.3d 94, 99 (2d Cir. 2003) (internal quotation marks omitted)); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party carries the burden of proving that there is no genuine dispute respecting any material fact and "may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case." Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223 (2d Cir. 1994). Once this burden is met, in order to avoid the entry of summary judgment against it, the non-moving party "must come forward with specific facts showing that there is a genuine issue for trial." LaBounty v. Coughlin, 137 F.3d 68, 73 (2d Cir. 1998). In reviewing the record before it, "the court is required resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997) (citing Anderson, 477 U.S. at 255).

II.     Defendants are Entitled to Summary Judgment

In his sole remaining claim, brought pursuant to 42 U.S.C. § 1983, plaintiff alleges that defendants were deliberately indifferent to his medical conditions, causing him injury and pain and suffering in violation of his constitutional rights. Specifically, with regard to Dr. Montalbano, plaintiff claims that, although he otherwise received appropriate medical treatment while incarcerated, Dr. Montalbano "refused to provide plaintiff with accurate medical care and appropriate medication(s) for his serious life threatening [physical] and psychiatric illness." Compl. at ¶¶ 6, 7 10; Dkt. No. 72. With regard to Nurse Sharpe, plaintiff alleges that the defendant denied him use of a wheelchair for distances over 200 feet, as prescribed by Dr.

Ezekwe. See Dkt. No. 26 at 10 n.5; Dkt. No. 72 at 7. As a result, plaintiff contends that he was "continuously in pain, and suffered recurrent psychiatric illness, all of which was (sic) accompanied by horrific severe chronic pain to his lower back, right foot, and to his thoraco (sic) lumbar area." Compl. at ¶ 11.[6]

Section 1983 provides a civil cause of action against a person who, acting under the color of state law, deprives another of any of the rights, privileges, or immunities secured by the Constitution and its laws. 42 U.S.C. § 1983. Where, as here, a prisoner claims that he has been unconstitutionally denied medical care, his Section 1983 claim is predicated on an alleged violation of the Eighth Amendment, which prohibits the infliction of cruel and unusual punishment on those convicted of crimes and "imposes a duty upon prison officials to ensure that inmates receive adequate medical care." Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006); U.S. Const. amend. VIII. A "mere disagreement over the proper treatment does not create a constitutional claim . . . [s]o long as the treatment given is adequate." Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998). Prison officials and medical officers have wide discretion in treating prisoners, and "determinations of medical providers concerning the care and safety of patients are given a 'presumption of correctness.'" Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001) (quoting Perez v. Cnty. of Westchester, 83 F. Supp. 2d 435, 440 (S.D.N.Y. 2000)). "[D]isagreements over medications, . . . , forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim. These issues implicate medical judgments and, at worst, negligence

---

[6] In his opposition to summary judgment, plaintiff asserts, without factual support, that defendants' actions violated his rights in various other ways. The court has already ruled that plaintiff cannot pursue claims under the Americans with Disabilities Act in this case. See Dkt. No. 26 at n.5. To the degree that plaintiff is trying to bring additional claims not already asserted, he may not do so on summary judgment. See Hawana v. New York, 230 F. Supp. 2d 518, 534 (S.D.N.Y. 2002) ("The plaintiff cannot raise new claims in a response to a motion for summary judgment.").

9

amounting to medical malpractice, but not the Eighth Amendment." Id. (citing Estelle v. Gamble, 429 U.S. 97, 107 (1976)).

To state a cognizable claim of medical mistreatment under Section 1983, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). This deliberate indifference standard includes both an objective and a subjective element. See United States v. Walsh, 194 F.3d 37, 48 (2d Cir. 1999) (citing Hudson v. McMillian, 503 U.S. 1, 7-8 (1992)); Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). The objective element requires plaintiff to show that he was "actually deprived of adequate medical care" and that "the inadequacy of medical care [wa]s sufficiently serious." Salahuddin, 467 F.3d at 279-280 (citing Farmer v. Brennan, 511 U.S. 825, 832 (1994)). The subjective element demands a showing that the defendant acted with a sufficiently culpable state of mind, namely, that he was deliberately indifferent to plaintiff's health. Id. at 280. "This mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." Id.

Here, defendants each correctly argue that they are entitled to summary judgment, as plaintiff has failed to meet his burden of establishing the subjective element of his claim with regard to either defendant.[7] The record shows that plaintiff received regular monitoring while under Dr. Montalbano's care and that Dr. Montalbano made a determination to seek a non-narcotic course of treatment and to provide plaintiff with a cane based on the medical reports before him.[8] Plaintiff's medical records demonstrate that Herkimer, Oneida, and Downstate

---

[7] For the purposes of this motion, defendants did not argue that they are both entitled to summary judgment on the objective element of plaintiff's claim. Accordingly, the court does not address this issue.

[8] Defendants correctly note that, in his complaint, plaintiff alleged that Dr. Montalbano's treatment was constitutionally insufficient only with regard to plaintiff's pain management regimen and not with regard to his non-approval of a wheelchair. Defs.' Reply Mem. of Law at 5-6. However, to the degree that plaintiff's arguments on the issues are intertwined, the court finds it appropriate to address them both. See Dkt. No. 72 at 4 (arguing that a narcotics regimen is necessary to plaintiff's ability to function daily without).

10

employed a similar, non-narcotic treatment regime, accompanied by the use of a cane, and plaintiff does not assert that their treatment caused him undue suffering. Moreover, another doctor continued plaintiff on non-narcotic treatments for six months before ultimately prescribing a low-dose opioid to plaintiff. Given these facts and in the absence of other evidence indicative of a culpable mental state on the part of Dr. Montalbano, plaintiff cannot demonstrate that Dr. Montalbano was deliberately indifferent to plaintiff's suffering. That Dr. Ezekwe decided months later that plaintiff should be evaluated for the use of a wheelchair does not indicate that Dr. Montalbano acted with a sufficiently culpable state of mind when he decided not to provide a wheelchair at plaintiff's initial request. The memorandum to Physiatry noted that plaintiff's walking had changed since his arrival at Arthur Kill, and records contemporaneous with Dr. Montalbano's tenure at the prison indicate that plaintiff ambulated well with a cane. Similarly, there is no evidence that Nurse Sharpe was deliberately indifferent to plaintiff's health. In a sworn affidavit, Nurse Sharpe stated that she followed the doctor's orders regarding plaintiff's use of a wheelchair and never denied him use of it where permitted.

In opposing defendants' motion for summary judgment and arguing that defendants were deliberately indifferent to his serious medical needs, plaintiff asserts that Dr. Montalbano maliciously denied him proper treatment and that Dr. Ezekwe "overrode the decisions that had been made by Dr. Montalbano, putting his neck on the line and getting [him] the medical care [he] desperately needed." Dkt. No. 72 at 7. He vaguely claims that Nurse Sharpe was to provide him with a wheelchair over a month prior to his receipt of one and, on many occasions, did not give him a wheelchair for distances over 200 feet, as advised by Dr. Ezekwe. In this regard, he claims that "[e]verything in this facility is a minimum ½ mile, 2700 feet, one way." Id. at 7-8. However, plaintiff provides no support for any of these assertions, in the form of affidavits or

11

any other evidence, despite an extended period of discovery over the span of which plaintiff was granted five extensions.[9] Plaintiff's unsupported claims are insufficient to create a genuine issue of material fact where the record contains no facts capable of demonstrating that defendants were actually aware of a substantial risk that serious harm would result to plaintiff by pursing the course of treatment they did. Defendants are therefore entitled to summary judgment. See LaBounty, 137 F.3d at 73.

Defendants are also entitled to summary judgment on the grounds of qualified immunity. To be entitled to qualified immunity, a defendant must establish that "(1) [his] conduct [did] not violate clearly established constitutional rights, or (2) it was objectively reasonable for [him] to believe that [his] acts did not violate those rights." Provost v. City of Newburgh, 262 F.3d 146, 160 (2d Cir. 2001). The court finds that it was objectively reasonable for Dr. Montalbano to believe that his treatment of plaintiff did not violate plaintiff's clearly established Eighth Amendment rights, given plaintiff's medical history and the ongoing monitoring of him at Arthur Kill, as elaborated upon supra. Based on the record before the court, it was also objectively reasonable for Nurse Sharp to believe that, in following the medical orders of Arthur Kill's doctors and in ensuring compliance therewith, she was not causing plaintiff pain and suffering in violation of his constitutional rights.

---

[9] After the motion for summary judgment was fully briefed, plaintiff filed copies of an affidavit and deposition testimony wherein he asserts that Nurse Sharpe took away his wheelchair. Dkt. No. 76-3 at 1; Dkt. No. 76-4 at 7. These statements are vague, inconsistent, and provide no details about Nurse Sharpe's alleged misconduct. They do not constitute evidence capable of showing that Nurse Sharpe undertook actions she knew to present a substantial risk of serious harm to plaintiff.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted.[10] The Clerk of the Court is directed to enter judgment accordingly.

SO ORDERED.

/Signed by Judge Allyne R. Ross/
_____
Allyne R. Ross
United States District Judge

Dated: February 1, 2011
Brooklyn, New York

---

[10] On September 20, 2011, plaintiff submitted a letter request to the court for "more time to obtain a lawyer to help me finish this lawsuit and get the appropriate paperwork in order." Dkt. No. 76 at 2. Four and a half months have elapsed, and plaintiff has neither notified the court that he has retained an attorney nor sought to supplement the record with new or relevant evidence. Plaintiff's request is now denied. Discovery in this case closed on May 3, 2011, after the court granted numerous extension requests by plaintiff. Defendants informed plaintiff of their intention to move for summary judgment in a letter to the court dated May 25, 2011, and served plaintiff with their motion on July 8, 2011. Plaintiff has not provided a reason for why he did not seek representation sooner, and it is clear that defendants would suffer prejudice from further delay.

SERVICE LIST:

**Plaintiff:**

Paul Verbitsky
3091 Norway Street
P.O. Box 312
New Port, NY 13416